## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Sally Doe and Robert Doe, as
guardians of Jane Doe, their
daughter,

                Case No. 14-cv-11392
                Hon. Judith E. Levy

        Plaintiffs,     Mag. Judge Michael Hluchaniuk

v.

Jayark Corp., a foreign
corporation, and Rosalco, Inc., a
foreign corporation,

        Defendants.

_____/


## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT WITHOUT PREJUDICE [16]

## AND

## ORDER TO SHOW CAUSE WHY THE COURT SHOULD NOT APPOINT A NEUROPSYCHOLOGIST PURSUANT TO FEDERAL RULE OF EVIDENCE 706

This case arises out of a product liability action stemming from

Jane Doe's ("Jane") fall from a bunk bed manufactured by defendant

Jayark Corp. ("Jayark"), and imported and distributed by defendant

Rosalco, Inc. ("Rosalco"). Plaintiffs Robert and Sally Doe are Jane's parents and legal guardians. The fall occurred on March 11, 1995, at an Art Van Furniture Store ("Art Van") when Jane was three years old. This suit was filed nineteen years later on April 4, 2014, when Jane was twenty-two years old. Before the Court is defendants' Motion to Dismiss and/or Motion for Summary Judgment, arguing that plaintiffs are barred from bringing this suit by the statute of limitations. Given defendants' reliance on evidence outside of the pleadings, the Court will construe this motion as a motion for summary judgment. *See* Fed. R. Civ. P. 12(c); *Dowd v. Smoot*, 2010 WL 3269898 at *1 (S.D. Ohio 2010).

A hearing was held on October 9, 2014, and oral argument was heard. At the conclusion of the hearing, the Court ordered supplemental briefing on the limited question of the impact of the prosecution of a prior lawsuit where Jane Doe served as the plaintiff on whether she was able to comprehend her legal rights at the time the suit was pending and was therefore not continuously "insane"[1] from the time of her fall until this suit was filed.

---

[1] The Court will use the term "insanity" throughout the opinion with the understanding that this term is in the applicable statute and is a term of art, not because it is a useful descriptor in this or any other case.

For the reasons set forth below, the Court denies defendants' motion for summary judgment without prejudice. The Court further orders the parties to show cause why it should not appoint a neuropsychologist pursuant to Fed. R. Evid. 706. Such appointment would be to conduct an evaluation of Jane and a review of her medical records to assist the Court in determining whether she has been continuously unable to comprehend her legal rights due to insanity from the date of the fall until one year prior to the date this case was filed.

## I.   BACKGROUND

Plaintiff Jane Doe was born on October 1, 1991.

On March 11, 1995, when Jane was three years old, she fell off a bunk bed at an Art Van Furniture store. Immediately following the fall, plaintiff was taken to the emergency room where a doctor diagnosed Jane with a "torus fracture of the left wrist [and] cervical strain." The doctor noted that, while Jane complained of neck pain, she did not appear to show any symptoms related to head trauma. (Dkt. 16-4).

Plaintiffs claim that Jane suffered a traumatic brain injury from the fall, which led to subsequent diagnoses of attention deficit disorder and/or attention deficit hyperactivity disorder, oppositional defiant disorder, bipolar disorder, anxiety and depression, learning disabilities, and Asperger's Syndrome. (Dkt. 16-7). Records indicate that Jane began to suffer from a number of behavioral problems as early as September 1997, at which point doctors' notes indicate she began to have temper tantrums and discipline problems. (Dkt. 22-3). In one visit with a doctor, Jane's family indicated that these behavioral problems began in 1996 (about one year after the fall), and had escalated over time. (Dkt. 22-4).

In May 2002, Jane had a neuropsychological assessment conducted by a clinical psychologist, Dr. Joshua Kay. Dr. Kay found that Jane had problems with verbal and social skills, visual memory, behavior, and ability to focus. (Dkt. 23-4). Dr. Kay also noted that Jane's memory fell within normal limits and that there "were no indications of depression or any pervasive developmental problem." (*Id.*)

In November 2003, a second neurological consultation was conducted, during which it was noted that Jane suffered from learning disabilities that might have been caused by unnoticed seizures.  (Dkt. 23-5).  The osteopathic doctor conducting this exam found, furthermore, that Jane showed signs of "extremity weakness… visual-spatial immaturity, and dyspraxia," however, she also reviewed an MRI conducted in October 2003, and found that it "did not show any intracranial abnormalities."  (*Id.*)

On January 25, 2006, Dr. Susan Anderson conducted a "Cognitive Analysis, Academic & Language Assessment."   As part of this assessment, Dr. Anderson evaluated a quantitative EEG which showed "significant abnormalities" consistent with "cortical damage, likely the result of a head injury."  (Dkt. 23-6).  The most significant alleged abnormalities were found in the frontal lobe of the brain, which one depends on for reasoning, planning, control of emotion, problem-solving, and language.  Dr. Anderson predicted that Jane would need ongoing assistance to live outside of home as she got older.  (Dkt. 23-6).  In 2007, a psychological evaluation indicated that Jane had low to below average

cognitive functioning and required special education support "under the educational diagnosis of Traumatic Brain Injury (TBI)". (Dkt 23-7).

Defendants paint a very different picture of Jane. They point to evidence showing that Jane performed well in school in the years following the incident, and that she graduated from Brighton High School without having to repeat a class. She received her driver's license at the age of seventeen on her first attempt. (Dkts. 16 at 15; 16-9 at 8, 14). Jane also participated in a variety of activities throughout high school, including sports, babysitting, driving unsupervised, and working as a cashier at a McDonald's restaurant. (Dkt. 16-9 at 5-6, 17, 30). In fact, plaintiff was met with significant success as a track runner in high school. Defendants characterize her as a "typical" person of her age, who attended community college and has an active social life. (Dkt. 16 at 16-17).

Defendants submitted surveillance footage of Jane driving on a multi-lane highway to the mall with her then fiancé and her five or six year-old sister. Despite claims of memory loss, deposition testimony from an earlier lawsuit against Art Van revealed that plaintiff was able to remember important events in both the short and long-term. (Dkt.

16-9 at 20).  For example, she was able to remember specific facts like how long her parents were married and her best times in track races she ran in high school.  (*Id.* at 30, 56).

Plaintiff turned eighteen on October 1, 2009.

On October 11, 2009, Jane's mother signed a retainer agreement with a law firm to represent Jane in a negligence action against Art Van.  (Dkt. 21-3).  On May, 25 2010, Jane filed a lawsuit against Art Van in her personal capacity.  At no point in that suit did her lawyer, opposing counsel, or the court question whether Jane was competent to serve as the plaintiff in the case.  In that lawsuit, Jane sought damages from Art Van for its alleged negligence with respect to the March 1995 fall.  She also filed a legal malpractice claim against her former attorney, Michael Hatty ("Hatty"), for failing to bring a case against any defendant in his fourteen years of representation of Jane and her family. (Dkt. 16-13).

The claims against Hatty were dismissed; however, the claims against Art Van proceeded with extensive discovery.  In a deposition held on June 14, 2011, Jane testified that she understood she was suing Art Van because she fell off a bunk bed in its store when she was

7

younger.  (Dkt. 16-9 at 52).  At the time of this deposition, she did not know she had brought a suit against her former attorney, whether she signed a document to retain her current attorney (she did not), or what the nature of her fee arrangement with him was (her mother handled this).  (*Id.* at 177).

On August 16, 2011, about two months before Jane Doe's nineteenth birthday, Sally and Robert Doe sought and received conservatorship for their daughter from the Probate Court of Livingston County.  (Dkt. 21-4).  This was shortly before a settlement in Jane's case against Art Van was to be disbursed.  The probate court found that:

> [u]pon presentation of clear and convincing evidence, [Jane Doe] is in need of a conservator because she is unable to manage her property and business affairs effectively because of mental deficiency and the individual has property that will be wasted or dissipated unless proper management is provided.

(*Id.*)

On May 22, 2012, Sally and Robert Doe sought and obtained appointment as their daughter's full legal guardians following a determination by the Probate Court of Livingston County that Jane Doe

was unable to comprehend her legal rights.  (Dkt. 21-1 & 21-2).  The court found that based on Jane Doe's "traumatic brain injury… [she] lack[ed] sufficient understanding or capacity to make or communicate informed decisions, and is an incapacitated individual."  (Dkt. 21-2).  The judge found, furthermore, that the appointment of a guardian was necessary because Jane was "totally without the capacity to care for herself."  (*Id.*)  In reaching this decision, the probate court relied on testimony from Sally Doe as well as Jane's guardian ad litem, James Shay ("Shay").  (Dkt. 21-1).  Shay testified that Jane was not capable of making financial, legal, or general life decisions on her own.  (*Id.* at 7-8).  His testimony was based on his personal conversations with Jane and her parents, along with his review of a six-year old evaluation conducted when Jane was fourteen years old.  (*Id.* at 9).

The law suit against Art Van settled in or around November 2012.  (Dkt. 16-14).  On April 4, 2014, when Jane was twenty-two years old, plaintiffs filed this lawsuit against Jayark and Rosalco.

## II.    STANDARD OF REVIEW

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir. 2002)).

## III.   ANALYSIS

### A. Whether the Disability of Infancy Applies

The statute of limitations for product liability actions in Michigan is three years from the date the cause of action accrued.  M.C.L. § 600.5805(13).  In this case, because Jane Doe was a minor at the time of the alleged injury, she was entitled to take advantage of the one year grace period provided for in M.C.L. 600.5851(1).  Section 5851 modifies the statute of limitation where the cause of action accrued when the

party entitled to bring suit is a minor, permitting the individual to file suit within one year after the disability of infancy is removed. Accordingly, in this case, the one year grace period expired when Jane Doe turned nineteen on October 1, 2010.

### B. Whether the Disability of Insanity Applies and Tolls the One Year Grace Period

Where two disabilities are alleged (in this case infancy and "insanity"), the Court begins the grace period when the second disability is terminated. M.C.L. § 600.5852(5).

Section 5851 defines insanity as "a condition of mental derangement such as to prevent the sufferer from comprehending rights he or she is otherwise bound to know and is not dependent on whether or not the person has been judicially declared to be insane." M.C.L. § 600.5851(2).[2] Section 5851 provides that, in order for the statute of limitations to toll, the person must have been considered to be insane "at the time the claim accrues." *Id.* at § 5851(3). Successive disabilities

---

[2] Arguably, because Jane Doe was a minor until October 1, 2009, she was not "otherwise bound to know" and comprehend her legal rights until that date. If this is correct, then the Court's analysis of Jane Doe's insanity would be limited to the time period from her eighteenth birthday to one year prior to filing this suit. Interestingly, the record is devoid of any medical or psychiatric records during this time period.

may not be tacked onto one another, and the Court may only recognize disabilities that existed at the time the claim first accrued. *Id.* at §5851(4).

 "Plaintiffs bear the burden of demonstrating that they are entitled to the benefit of [section 5581]." *English v. Bousamra*, 9 F.Supp.2d 803, 808 (W.D. Mich. 1998) (citing *Warren Consolidated Schools v. W.R. Grace & Co.*, 205 Mich.App. 580, 583 (1994)).

Plaintiffs allege that Jane Doe is insane under Michigan law and has continuously suffered from that disability since the time of her fall in 1995.  They need not show that Jane's insanity resulted from the fall in order to prevail on this theory – merely that she has been unable to comprehend her legal rights as a result of a mental condition that has been in existence since her alleged claim accrued.

Defendants rely on two arguments to show that there is no issue of material fact as to whether Jane Doe has continuously suffered from the disability of insanity since the injury occurred.   First, that the disability of insanity did not exist at the time the claim accrued. Second, that the available medical evidence and Jane Doe's lawsuit against Art Van show a definitive break in the continuity of any alleged

insanity.  Plaintiffs respond, primarily, by directing the Court to the probate court's determination that Jane was found to be legally insane in 2012, and required a legal guardian to protect her interests.

### 1. Whether the Disability of Insanity Existed at the Time the Claim Accrued

The Michigan statute that governs the modification of a statute of limitations provides:

> To be considered a disability, the infancy or insanity must exist at the time the claim accrues.  If the disability comes into existence after the claim has accrued, a court shall not recognize the disability under this section for purposes of modifying the period of limitations.

M.C.L. § 600.5581(3).

Defendants note that the emergency room record shows no evidence of a concussion or traumatic brain injury immediately following the fall.  Medical records, however, indicate that shortly after the incident, Jane began experiencing behavioral issues that doctors attributed to the fall.  (Dkts. 22-3 & 22-4).  Subsequent medical and psychological examinations related to Jane's behavioral, psychological, and developmental problems also relate their origin to the fall at Art Van.  Jane's parents, for example, sought treatment for Jane's behavioral problems as early as September 1997.  (Dkt. 22-3)

Treatment records indicate that Jane's parents explained that they began to notice a shift in her behavior in 1996 (about a year after the initial fall) and that her tantrums worsened over the course of the subsequent year. (Dkt. 22-4).

In 2003, furthermore, a second neurological consultation concluded that Jane's behavioral problems might have been caused by unnoticed seizures and that "her history [was] significant for head trauma sustained at 3 years of age." (Dkt. 23-5).

While earlier exams in the record do not note any physical signs of head trauma, Dr. Anderson evaluated a quantitative EEG in January 2006, and concluded that it showed "significant abnormalities" in the frontal lobe consistent with "cortical damage, likely the result of a head injury." (Dkt. 23-6). Dr. Anderson predicted that this injury would influence Jane's ability to live on her own and she would likely require regular assistance as she got older. (*Id.*)

Finally, in 2007, a psychological evaluation indicated a diagnosis consistent with traumatic brain injury that had resulted in low levels of cognitive functioning. (Dkt 23-7).

No record traces the onset of Jane's problems directly to the date of the fall, yet there are findings that connect the symptoms to a period of one to two years after the fall. Additional medical records discussed above relate Jane's behavioral and cognitive problems generally back to the fall. In any event, Jane's age at the time of the fall would have precluded her from comprehending her legal rights at that particular time in her life. Accordingly, the Court finds that there is arguably a factual question as to whether Jane's alleged insanity existed at the time the claim against defendants accrued.

2.   Whether Jane Doe Was Continuously Insane from March 11, 1995 Until At Least One Year Before Filing This Lawsuit

In order to prevent the one-year grace period from running after Jane turned eighteen, the condition of insanity must be continuous. *See English*, 9 F. Supp at 808 (citing M.C.L. § 600.5851(4)). Defendants, in part, rely on evidence that allegedly shows Jane Doe living a "normal" life – working as a cashier, graduating from high school, dating, and the like. With respect to the medical evidence provided by plaintiffs to show that Jane Doe's insanity has been continuous, the Court is concerned by the fact that there is approximately a ten year gap after

the initial injury before any objective medical examination finds an injury consistent with this proposition.  (Dkt. 23-6).  Nonetheless, the Court is not convinced that, in viewing the medical evidence in the light most favorable to the plaintiff, there is no issue of material fact as to whether Jane Doe was continuously insane.  Indeed, plaintiffs have provided some evidence to show that Jane's cognitive and behavioral problems may have emerged soon after the fall and extended through her high school years.

Defendants also point to the fact that after plaintiff turned eighteen she was represented by counsel and, in her personal capacity, sued Art Van over the same incident at issue in this case.  While the ability to retain a lawyer is not "conclusive evidence of mental competence for the purposes of [a] tolling provision," the fact that counsel was previously retained by a plaintiff is evidence that weighs in favor of finding that the individual was not mentally deranged. *Davidson v. Baker-Vander Veen Construction Co.*, 35 Mich.App. 293, 301 (1971); *Calladine v. Dana Corp.*, 679 F.Supp. 700, 702 n. 1 (E.D.Mich. 1988) ("the fact that an individual has retained an attorney offers some evidence that the individual is mentally competent."); *but*

16

*see Makarow v. Volkswagon of Am., Inc.*, 157 Mich.App. 401, 409 (1987) ("the kind of derangement contemplated by the statute might include a condition such that, while somewhat aware, the person is only partially aware of the circumstances entitling him to maintain an action.")

Defendants argue that Jane Doe not only has been able to comprehend her legal rights generally, but also has understood her legal rights with respect to the facts at issue in this particular case.  In *Bradley v. Macomb Cnty.*, 370 F.Supp.2d 607 (E.D. Mich. 2005), for example, the court granted defendant's motion for summary judgment finding that plaintiff was not insane and the statute of limitations had run.  In *Bradley*, plaintiff provided evidence of mild cognitive impairment and a history of aneurism, seizure, and other brain maladies to support a showing of insanity.  *Id.* at 611.  The court found, however, that it was unclear from the evidence that the plaintiff's condition endured consistently during the period of time the statute of limitations was running.  *Id.*  The court also held that the plaintiff's disabilities did not rise to the level of mental derangement because he could take care of his daily needs and could understand that he had rights he could pursue against those who had harmed him.  *Id.*  The

plaintiff in that case brought suit against defendant without the assistance of a guardian, so the court found that, by definition, he knew his legal rights. *Id.*

Similarly, Jane, in her individual capacity, brought a prior suit against Art Van stemming from the same facts alleged in the matter currently before the Court. In her deposition testimony taken in that case, Jane acknowledged that she understood she was suing Art Van because she fell off a bed in one of its stores. (Dkt. 16-9 at 52). At the time of that deposition, she did not know she had brought a suit against her former attorney, whether she signed a document to retain her current attorney, or what the nature of her fee arrangement with her attorney was. (*Id.* at 177). However, it was Jane's mother who sought and retained an attorney to represent Jane's interest in the suit against Art Van and her former attorney, so it is not surprising that Jane lacked this information. (Dkt. 20-3). Viewing the evidence in the light most favorable to plaintiff, the record shows that Jane arguably may have "only partially or imperfectly be[en] able to assist [her] lawyer in prosecuting a claim." *Makarow*, 157 Mich.App. at 409.

The facts before the Court diverge from *Bradley* in another key respect – here, a state court made a determination that Jane Doe requires legal guardianship due to her mental deficiencies. First, in August 2011, a probate court granted a conservatorship over Jane, finding that "she is unable to manage her property and business affairs effectively because of mental deficiency." (Dkt. 21-4). Then, in May 2012, a second probate court made a determination that Jane Doe was legally "insane" and appointed a guardian to represent her legal interests. (Dkt 21-1).

Rulings from state probate courts are entitled to the same deference in federal court that they would receive under the law of the state. *See Warda v. C.I.R.*, 15 F.3d 533, 537 (6th Cir. 1994) (internal citations omitted). Michigan courts "give broad deference to findings of fact made by the probate court because of the probate court's unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Estate of Windham*, 2010 WL 293064 at *1 (2010).[3]

---

[3] Defendants argue that the probate court's appointment of a legal guardian is of "no moment" as it is irrelevant to the question of insanity under the statute. Defendants, however, misinterpret *Professional*

The Court has several concerns with relying on the probate court's decision to appoint a legal guardian for Jane Doe.   Even granting significant deference, the Court does not find the probate court's decision particularly persuasive as to whether Jane Doe has been continuously insane since the fall, and particularly whether she has been insane since she turned eighteen.   First, the probate court ruling was issued in May 2012, more than six months after Jane Doe turned nineteen.   As a result, that court's is not dispositive as to whether Jane was insane from age eighteen (when she served as a plaintiff in her first lawsuit) until the time of the probate court's decision.   Second, the probate court primarily relied on (1) subjective testimony from Jane's mother; and (2) testimony from a guardian ad litem who spoke with the plaintiffs and reviewed a psychiatric evaluation that was conducted six years earlier when Jane was fourteen.   Neither the probate court nor the guardian ad litem had access to more recent medical evidence.

*Rehab. Assocs. v. State Farm Mut. Auto. Ins. Co.*, 228 Mich.App 167 (1998).   That case stands for the proposition that an appointment of a legal guardian for a mentally incompetent person does not automatically remove the person's disability under section 5851. *Rehab Assocs.*, 228 Mich.App at 176.   Defendants argue both sides on this issue – that the Court should find Jane's role in the Art Van case to be dispositive on the issue and find the appointment of a legal guardian to be of no significance with respect to her legal capacity.

Despite these concerns, other facts in the record set forth above could lead a reasonable juror to conclude that Jane Doe has been continuously insane since the time of her fall at Art Van.

Accordingly, the Court finds that, viewing the evidence in the light most favorable to plaintiff, the probate court's decision paired with the medical evidence *may* create a material issue of fact as to whether Jane Doe was continuously insane until at least until a year before filing this lawsuit. *See Davidson*, 42 Mich.App. 305-07 (whether a person is insane under Michigan law is typically a question to be determined by a trier of fact); *Hill*, 42 Mich.App. at 412-13; *Lemmerman v. Fealk*, 449 Mich. 56 (1995) ("courts… have generally treated claims of insanity in order to avoid limitations periods as questions of fact unless it is incontrovertibly established either that the plaintiff did not suffer from insanity at the time the claim accrued or that he had recovered from any such disability more than one year before he commenced his action.")

### C. Appointment of an Independent Medical Examiner

While the Court finds that there may remain an issue of material fact, it has several concerns with denying this motion based upon the

current medical evidence provided by plaintiffs. The evidence is thin with respect to (1) the continuity of Jane's insanity, (2) the period of time Jane was represented by counsel after she turned eighteen, and (3) impact of Jane's current ability to live what appears to be a typical life, including taking on legal responsibilities attendant to driving and working as a cashier where she is responsible for customer service and interacting with money.

More than anything else, this Court is charged with deciding this motion based upon the truth regarding Jane Doe's legal capacity. For this reason, the Court is entering a show cause with respect to the appointment of a neuropsychologist. "[I]nvocation of Rule 706 powers is especially appropriate to protect the rights of an accused, a child, or the public interest. This is because, when such interests are at stake, there is a heightened judicial duty to see that the abuses and inadequacies of the adversaries should not be permitted to obscure the truth." 29 Wright & Gold, *Federal Practice and Procedure: Evidence* § 6304. The Court does not believe there have been "abuses" in this case, but there is a dearth of medical or psychiatric evidence covering the relevant time

period for this motion. For this reason, a Rule 706 show cause is appropriate.

Accordingly, the Court orders the parties to show cause why it should not appoint a neuropsychologist, pursuant to Fed. R. Evid. 706, to conduct a full review of Jane Doe's medical records related to whether she has been continuously unable to comprehend her legal rights due to "insanity" from the date of the fall until this case was filed and to conduct a complete evaluation of Jane's mental status to assist the Court in deciding the issue raised in this motion. *See* Fed. R. Evid. 706(a) (a court may "order the parties to show cause why expert witnesses should not be appointed [and] may appoint expert witnesses of its own selection."); *U.S. v. Bonds*, 12 F.3d 540, 568 (6th Cir. 1993) ("Federal Rule of Evidence 706 permits the court on its own to appoint an expert witness."); *Fugitt v. Jones*, 549 F.2d 1001, 1006 (5th Cir. 1977) ("Rule 706(a)… confers on a district court the discretionary power to appoint an expert on the court's own motion…")

## IV.   CONCLUSION

For the reasons set forth above, the Court DENIES defendant's motion for summary judgment without prejudice.

Pursuant to Fed. R. Evid. 706, the Court HEREBY ORDERS the parties to show cause why it should not appoint a neuropsychologist to conduct a full review of Jane Doe's medical records and to conduct a complete evaluation of Jane's mental status. The Court will conduct a telephonic status conference on January 20, 2015 at 10:00 a.m. to set a briefing schedule and hearing on the show case order.

Dated: January 8, 2015                     s/Judith E. Levy
Ann Arbor, Michigan                        JUDITH E. LEVY
                                           United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 8, 2015.

                                           s/Felicia M. Moses
                                           FELICIA M. MOSES
                                           Case Manager